### KAKU NAGANO
v.
### BROWNELL, Atty. Gen.
No. 10965.

United States Court of Appeals
Seventh Circuit.

April 22, 1954.

Aff

Dallas S. Townsend, Asst. Atty. Gen., Irwin N. Cohen, Robert Tieken, U. S. Attys., Chicago, Ill., James D. Hill, Irwin A. Seibel, George B. Searls, Attys., Department of Justice, Washington, D. C., for appellant.

Edward R. Johnston, C. Lysle Smith, John Alden Powers, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

In Kaku Nagano v. McGrath, 7 Cir., 187 F.2d 759, we determined that the averments of plaintiff's complaint constituted a statement of a good cause of action and accordingly reversed the judgment of the District Court to the contrary. The Supreme Court affirmed, in McGrath v. Kaku Nagano, 342 U.S. 916, 72 S.Ct. 363, 96 L.Ed. 685, by an evenly divided court. Upon remand for trial, the District Court, upon the stipulated facts and certain additional evidence, found, essentially, that the averments of the complaint had been proved and entered judgment in favor of plaintiff. The essence of the original averments declared by us to be sufficient and of the later findings of the court at the trial after remand appears in our original opinion, and we shall not indulge in unnecessary repetition.

On appeal, the Alien Property Custodian urges that, on the undisputed facts, plaintiff was "resident within" Japan at the time the assets were seized and therefore, ineligible to recover them. He grounds his argument upon the coincidental fact that on the same day our decision was affirmed, another case of similar import, Guessefeldt v. McGrath, 342 U.S. 308, at page 312, 72 S.Ct. 338, at page 341, 96 L.Ed. 342, was decided,

in the opinion in which the following sentence appears: "To hold that 'resident within' enemy territory implies something more than mere physical presence and something less than domicile is consistent with the emanations of Congressional purpose manifested in the entire Act, and the relevant extrinsic light, including the decisions of lower courts on this issue, which we note without specifically approving any of them. See McGrath v. Zander, 85 U.S.App.D.C. 334, 177 F.2d 649; Josephberg v. Markham, 2 Cir., 152 F.2d 644; Stadtmuller v. Miller, 2 Cir., 11 F.2d 732, 45 A.L.R. 895; Vowinckel v. First Federal Trust Co., 9 Cir., 10 F.2d 19; Sarthou v. Clark, D.C., 78 F.Supp. 139." He argues that by this language, the court defined "residence" as something other than what we held it to be. He asserts that because of the language quoted, it follows as a matter of law, on the undisputed facts, that plaintiff was resident within Japan. Even though the cited language would seem to have been unnecessary to the decision and in fact fixed no definite limitations upon the meaning or connotation of the term "resident", his argument is that because of this comment the court must have meant to disapprove our decision in the Nagano case, despite the fact that it was affirmed, and that what we there said is no longer the law and cannot, therefore, be considered the law of this case. It seems to us an anomalous suggestion that, though our decision was affirmed, the Supreme Court, in another case the same day said something that shows that we should have been reversed and that though the court affirmed our judgment, it really meant that we should have been reversed. To us this is pure sophistry.

■ It is beyond question that, in a trial following a reversal and remand, if the evidence is substantially the same as the facts upon which the reviewing court based its decision, matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and, on second appeal, in the appellate court, unless there is plain error of law in the original decision. In other words, though the rule that what is said on appeal becomes the law of the case is not an iron-clad rule which denies power in the court to correct its manifest error, it is one of sound policy. Litigation would be unduly prolonged if every dissatisfied litigant were permitted to renew on successive appeals questions previously considered and decided. General Motors Acceptance Corp. v. Mid-West Chevrolet Co., 10 Cir., 74 F.2d 386, 388; State of Kansas v. Occidental Life Insurance Co., 10 Cir., 95 F.2d 935, 936, certiorari denied 305 U.S. 603, 59 S.Ct. 63, 83 L.Ed. 383; Midland Valley R. Co. v. Jones, 10 Cir., 115 F.2d 508, 509; Wyant v. United States Fidelity & Guaranty Co., 4 Cir., 116 F.2d 83, 85, certiorari denied, Wyant v. Caldwell, 314 U.S. 610, 62 S.Ct. 57, 86 L.Ed. 490; United States v. Bollman, 8 Cir., 81 F.2d 1009, 1010; Supervisors v. Kennicott, 94 U.S. 498, 24 L.Ed. 260. Thus, in State of Kansas v. Occidental Life Insurance Co., 10 Cir., 95 F.2d 935 at page 936, the court said: "Matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and in the appellate court where the evidence is substantially the same, and the introduction of new evidence in the second trial which is merely cumulative does not change the rule." We adhere to our ruling in Standard Sewing Machine Co. v. Leslie, 7 Cir., 118 F. 557, 559, certiorari denied, 188 U.S. 740, 23 S.Ct. 848, 47 L.Ed. 677: "It is a familiar and entirely righteous rule that a court of review is precluded from agitating the questions that were made, considered, and decided on previous reviews. The former decision furnishes 'the law of the case' not only to the tribunal to which the cause is remanded, but to the appellate tribunal itself on a subsequent writ or appeal."

■ This record discloses no reason why this case should be allocated to any exception to the rule. Though the court was evenly divided, our decision was affirmed and nothing said in the companion case of Guessefeldt v. Mc-

Grath, supra, can alter that fact. A judgment affirmed by a divided court is as conclusive and binding upon the parties as if rendered upon the concurrence of all participating judges upon every question involved in the case. Durant v. Essex Co., 7 Wall. 107, 74 U.S. 107, 19 L.Ed. 154.

 Moreover, we think there is nothing in the language of the Guessefeldt case which impinges in any way upon the soundness of this conclusion. The Custodian attempts to read into our original decision a declaration that "residence" is synonymous with "domicile" and argues that the quoted language in the Guessefeldt opinion fixes a different standard. The fallacy in this argument lies in the fact that this court in no wise confused the terms "domicile" and "residence" or treated them as equivalents. Indeed, we made no mention of domicile, but passed only upon the question of whether plaintiff was "resident within" Japan within the meaning of the statute. This issue we resolved upon consideration of the sufficiency of the averments of the complaint, which have now been proved. Indeed, in its findings, the trial court, after consideration of all the evidence, found specifically that plaintiff was not resident in Japan. In doing so it had for support, in addition to proof of the averments of the complaint, the oral testimony of, amongst others, the witness who was most concerned, with the advantage of being able to observe her manner upon the witness stand and all other factors bearing upon her credibility. The determination of the District Court that plaintiff was not "resident within" Japan was grounded upon the specific facts presented, including the intention of plaintiff as to residence as exemplified not only by her own statements but also by her acts. We originally pointed out that, under the averments of the complaint, her stay in Japan was due to the fact that, under unique Japanese customs, either she or her husband was compelled to return there to arrange, with the aid of professional match-makers, marriages for their daughters, who could not then enter this country,—not because she expected to reside there,—and upon the further facts that she intended at all times to maintain her residence in Chicago where she and her husband resided, where he had his business and where the property involved in this case had been accumulated and that when she did return to the United States, a Board of Special Inquiry specifically found that she was returning to America from a temporary visit abroad; that she had never voluntarily relinquished her residence in the United States and that she was entitled to enter this country "as a returning resident." The Naturalization Service of the Department of Justice held that the evidence amply supported this conclusion. The trial court considered not only all this evidence but, as we have pointed out, all other evidence bearing upon the question of residence, all of which applies and adequately supports its findings and conclusions.

The judgment is affirmed.